The first case on the docket is Local 702 v. Washington County. We have Mr. Martin and Ms. Kuzuzic. Mr. Martin, you're up first, counsel. Fire away. Thank you, Mayor of the Police Department. My name is Art Martin. I represent Local 702 of the International Brotherhood of Electrical Workers. Local 702 has had a collective bargaining agreement with Washington County, the FLE in this case, for a number of years. That collective bargaining agreement, the union represents the employees of Washington County, including the Sheriff's Department, which is the particular department at issue in this case. That collective bargaining agreement contains a standard arbitration, a grievance and arbitration procedure contemplated by Illinois public sector labor law, which foregoes, the union foregoes the right to strike in return for a comprehensive grievance and arbitration procedure. One of the clauses in the collective bargaining agreement provides that overtime shall be paid if work is assigned outside the scheduled hours. In this case, the union found that that happened and filed a grievance complaining about the sheriff assigning persons to work outside their regular scheduled hours without paying the appropriate overtime. When the union sought to process the grievance, the county refused to proceed with the grievance, claiming that the contract should be interpreted to read that the union may only pursue a grievance if an individual employee files the grievance. That argument is made based on section 25 of the collective bargaining agreement, which provides that an employee or employees may pursue a grievance and in step one, the employee or employees may or shall bring their grievance to the to the employer. In this case, the individual employee was not interested in pursuing the grievance. She was OK with the fact that she didn't get paid overtime hours. The union sought to preserve the integrity of the overtime provision and went to pursue the grievance. The county took the position that since an individual employee didn't file a grievance, the union couldn't. The union's claim in this case is that there draws the court's attention to the number one, section 24, the no strike, no lockout clause, which provides that this agreement provides for the orderly and amicable resolution and settlement of any and all disputes, differences or disagreements of any carriage in which shall arise under the no strike clause. And the adjustment of grievances contemplates both circumstances where an individual employee can file a grievance and also explicitly provides that for the adjustment of grievances between an employer and the union. Expressly provides for that. And then under the arbitration procedure, the arbitration clause expressly provides that if a difference arises between the union and the employer, which involves an interpretation and application of the terms of this agreement, which cannot be resolved by the parties, either party may invoke arbitration. To the extent that there is a dispute about how this arbitration procedure ought to work, it's a dispute that ought to be resolved by an arbitrator. The court's issues of substantive arbitrability or whether or not there is in fact an agreement to arbitrate are for the court to decide. In this case, there is no dispute that there is an agreement to arbitrate, a comprehensive agreement to arbitrate. The dispute is whether or not the union followed the process correctly. We think we're right about that, that the process contemplates a situation where the union can pursue agreements as well as an employee. Nevertheless, to the extent that there is a dispute about that, that's a dispute that ought to be raised with an arbitrator. And we point to the cases involving the case from this district, Menard County Housing Authority, Village of Carpentersville, and amalgamated transit union cases. Each of those cases involved complaints about whether or not the procedures of the grievance procedure were followed. In the Menard case, it involved a dispute whether or not the union actually could represent the... The Menard case was a case where there was a contracting case, it was whether or not timeliness was followed. And in the Menard case, this court concluded that timeliness issues such as that that involved the procedure, that those should be resolved by the arbitrator. In the Village of Carpentersville case, a similar timeliness issue, a procedural issue was raised. In a case that's very much on point, which is the amalgamated transit union local 900 case, that actually involved a case where the union's lawyer sought to evoke arbitration and sent the notice to proceed to arbitration to the wrong person. Very similar to this case where the county argues that the union didn't bring the grievance, the proper person didn't bring the grievance to the attention of the employer. In the local 900 case, the amalgamated case, in that case the union's lawyer sent the notice to the... I believe it was somebody else in the transit authority other than the person designated in the collective bargaining agreement. And then the transit authority argued, well, we don't have to process the grievance because you didn't file the grievance with the right person. And the court said, discuss Carpentersville and the other cases along those lines and says, clearly in Illinois, under the Illinois Arbitration Act, those are matters of procedural arbitrability that are to be resolved by the arbitrator who can tell the parties what their collective bargaining agreement means. Again, in this case, if there were a dispute about whether or not the parties had an arbitration agreement, that would have been for the trial court to decide. In this case, there's no question that the parties have an arbitration agreement. It's a standard, comprehensive arbitration agreement contemplated by the Act. And it simply is, what does that procedure mean? Does step one mean simply, is step one simply an opportunity for individual employees to pursue a grievance? And the arbitration clause clearly recognizes the union's standing to pursue the grievance. So, you know, again, we think that's clear, but we don't think that's a matter for the court to decide. That's a matter that we would throw to the arbitrator and the county would complain that we didn't do it right. We'd have a discussion about what the collective bargaining agreements are, you know, supposed to prove. So, you know, the county argues that somehow since the grievance, or since Ms. Whipple, in this case, didn't have any objection, that that somehow the union doesn't have standing to pursue the grievance. And, of course, the union's responsibility and, frankly, the union's duty under, you know, the standard collective bargaining law is that they have to represent the employees and enforce the collective bargaining agreement. There are situations sometimes when an individual employee in the bargaining unit may not like the result. It happens often when there's a job bid and there's competing, people competing for a job. The person who doesn't have the seniority may not like that result. Nevertheless, it's the union's responsibility to evaluate a grievance, determine whether it has merit, and pursue it if it has merit. Frankly, we all work in an office. In this case, one of the office workers was happy with the arrangement she had with the sheriff. It may be that some of the other workers in the unit aren't happy with that arrangement or think that that's taking advantage. It's a small workplace. They may not be that interested in filing the complaint themselves, so they go to the business agent and say, look, you know, he can't do that, and so the business agent pursues the grievance. You know, the function of having a step one where an individual employee can bring the grievance certainly wasn't denying the union the opportunity to enforce the collective bargaining agreement. There was an issue raised in the county's brief about whether or not somehow there's a condition precedent to the union that the court has to resolve and that seems to come from some earlier cases involving franchise agreements where there was an arbitration clause in the franchise agreement and one party sought to compel arbitration and the other party said, oh, you can't because you didn't comply with Illinois and Nevada franchise law. And what the court said in those cases, you know, those cases involve timeliness and whether or not somebody timely revoked their arbitration clause, their franchise agreement, that those timeliness issues are to go to the arbitrator and the arbitration clause. That's pretty much what I would say the case is. What makes this a little unusual is that we've got the union wanting arbitration and the county wanting to go to court, as opposed you would think that the way it normally would set up, it seems in the past, you know, my limited contact with these types of cases that the union wants to go to court as opposed to go to arbitration. And that has nothing to do with the posture of your case with the facts here. No, you're certainly right. I've been involved in cases where that was the posture. Who's wanting to go here, who's wanting to go there? Thank you, counsel. You'll have the opportunity to have rebuttal. Counsel? Good morning. Julie Kuzuzic on behalf of the county as the state's attorney, also acting in capacity as the county board representative, and in this particular instance, the sheriff of Washington County, Mr. Parker. The Menard County Housing Authority that counsel cited goes with a lot of the cases, and I think quite clearly on both sides, where there's a lot of issues that the courts don't agree on, whether it should be arbitrated, whether it shouldn't, should this go to the court, is there a condition precedent? So there's, I think, cases all over the place, and I think what makes this one unique and what we're arguing is that our collective bargaining agreement specifies that the union or that the employee brings the grievance first. And this is very important, because Ms. Whipple in this particular case wasn't paid. There may be a disagreement as to that, though, right? Well, there is a disagreement. I mean, even though you point out what seems to be clear language there, if there's a disagreement as to that, who determines that disagreement? Well, I think that what is clear here, though, is what we go under Zalesko, which the county cited, which is that this here is a condition precedent. Even Omigadda that the union presented says in there that the condition precedent of the union meeting with the employer was a condition precedent before you get to arbitration. What case did you say, I apologize? Omigadda Transit Union. In there, they specifically say a condition precedent is one which must be performed either before a contract becomes effective or which is to be performed by one party to an existing contract before the other party is obligated to perform. It goes on further down there to cite Burnished Metal Corporation and Hayman from 1983, where the trial board properly concluded that consultations by the shop steward and the union representative with the employer constituted conditions precedent to the resort to arbitration that were not merely procedural stipulations. And I think what is important here is the fact that I agree with Mr. Martin when he says that the union and an employer may have a grievance. An employee and the employer may have a grievance. But the employer, it has still made step one an employee's obligation to bring that grievance. If they wanted to do differently, they could have put the employee with the union and the employer or the union and the employer. But they didn't. The language is quite clear. He had a pretty simple rule there. He said the only role of the court is to determine whether you have an agreement. And if you have an agreement, anything past that would be procedural and that would be decided by an arbitrator. Do you disagree with that? I do to the extent that when you look at AT&T Technologies, they talk about the fact that there are some issues. I agree that there are procedural issues, timeliness that is in the Menard housing. There are some procedural issues, which is where the arbitrator. But the AT&T says you have to look at the clear language of the contract where it's clear and ambiguous. And in this particular case, it is. It just says the union or that the employee must bring that first step. It doesn't allow for the union to do it. And we have situations like this one right here where the employee doesn't even want. But why is it that the court decides that when you have an agreement? I mean, we've had it pretty much explained to us that you favor arbitration any time it's available over and over, not always in a union context, but in other contexts. So it seems to be a choice of form. But you're indicating some procedural issues are not sent to arbitration. Not this particular issue. Any other examples of procedural issues that don't go to arbitration? Not off the top of my head, but I think what is important here is, again, we're looking at the clear and unambiguous language of the contract, which quite clearly defines where it should start, and that's with the employee. If the parties wanted something different, we could have put the union in step one, but we didn't. And when you look at the cases, I think that most of the procedural issues has to do with industries, and the arbitrator has a specialized area where they may know language in the contract where the court wouldn't. And those issues, they're trying to decide procedurally, did the correct contract authority, for example, in Menard, send out the proper paperwork? Those are issues for an arbitrator. How do you frame the dispute in this case? What do you think the dispute is? The dispute is before we go to arbitration, have they followed the correct procedure? So it's not the issue of overtime pay? No. No, Mrs. Whipple didn't work overtime, but she adjusted her hours with the sheriff's department so that she worked instead of 11-2-7, she worked 8-4. Right. That has nothing to do with the issue before? Correct. And we're just saying that if you make an arbitrator the deciding person to say we're going to arbitrate, aren't you giving the fox the keys to the hen house, so to speak? Well, of course I'm going to arbitrate that, because it's self-interest to decide that you need to arbitrate this. And that's what they're asking you to do, let the arbitrator decide if we should arbitrate. Would you phrase it that the issue is who can bring the lawsuit? Who's the proper party to pursue this action? To pursue the grievance, yes. And that wouldn't be procedural, that wouldn't be something that the arbitrator would normally have to decide? In this particular case, no, because the language is clear and unambiguous. When you look at it, step one has to be that the employee starts that process. Not the employee in the union or the union. The language is very clear that this is where we start. And if we ignore that, then what is the purpose of our collective bargaining agreement? What effect does it have? I mean, wouldn't the arbitrator be capable of making that clear and ambiguous determination if that's what the language says? Again, I think what you're asking there is, does the arbitrator get to decide whether you should arbitrate? Not whether or not the procedures were followed. The first thing they have to decide is, you know, am I the proper person to decide the arbitration? And we're saying no, because if you allow that, then step one, two, and three are irrelevant. On step two, the union becomes involved in the procedure. And I agree that the union is the proper person to bring the grievance and declare arbitration in the long run. But when we first start out, the employee is obligated to bring a dispute. Because when you look at section 25.1, I believe it is, it talks about the harmonious relationship between the employer and the employee. Let us try to fix any problems we have. Most of the time they can be without even involving the union. I think that a contract that allows flexibility in the managerial rights with the union or with the employees and the employer benefit all parties. And in this particular case, you have an employee doesn't even want the grievance. And I think that's what we're trying to avoid. The parties anticipate that the employee is step one. And that's clear and unambiguous. Again, I would state that if there was other arrangements intended to be made, that we could have included the union in step one. But they're not. Under Zalunka versus the City of Chicago, again, it says, in order to determine whether a person or entity is entitled to compel arbitration, it is necessary.  This dispute has to first begin with the employee making the grievance? No, Your Honor. I think that's why we're here. I know. I think that's why we're here. Okay. So then if you look at the arbitration in 26.1, if a difference arises between the union and the employer, which involves interpretation and application in terms of the agreement, which cannot be resolved by the parties, the matter shall be submitted to arbitration. Isn't that what they're asking to do then? I think what is important there is that the language does say, in the event any differences shall arise during the term of this agreement between employer and employee or employer and the union. It even says that there will be differences between the employer and the union. Those ultimately will go to arbitration. But then after having said that, we still specify that step one is the employee only. So we recognize that there may be these differences and still require step one to be just the employee, recognizing that there are times when the union might want to bring a grievance. And the contract, I think, is what is the clear language. Step one, employee. Step two, we get into it with the union if they want to come and they want to follow up on the grievance. And we get to arbitration quite clearly if the arbitration is the controlling factor. Again, some of the points that were raised by the union is that it's absurd to not let them have the legal duty to enforce its terms. It talks about that we're violating public policy. That is not the county's intent. We're not here to rewrite history or change public policy. We understand arbitration is where we're ultimately headed when we have a dispute that continues or lingers. But in this particular case, I think that the section in the preamble and in the section that's outlined in the 25-1 is that we want harmonious relationship between the employer and employee and allow them that ability to solve any grievances that they have between them before we go to the next step. If we wanted to do something different, we could have wrote the contract different, but we didn't. That's the steps that need to be followed. That's, I think, most of my arguments other than what is in there. Again, on this particular issue, we feel like that the language is clear and ambiguous and it has to be followed. Thank you. I would just point out that the AT&T case, the Supreme Court case that the county mentioned, number one, reestablished the preference for arbitration in labor matters. The contract that the communication workers had with AT&T in that case specifically excluded some layoffs from the grievance and arbitration procedure. So they had a grievance and arbitration procedure. They provided that certain layoffs, certain types of layoffs were subject to arbitration and other types of layoffs were not specifically carved out of the agreement. So the litigation in that case and what the Supreme Court said is where the parties have agreed to carve out certain matters from arbitration and there's a dispute about whether that's submissible, then that would be a matter for the court to decide. Because in that case, there may not have been actually an agreement to submit that type of layoff to arbitration. So that distinguishes that case from the case at hand where we have a comprehensive layoff procedure. In addition, the Zenka case, that's a case where some firefighters filed a complaint or a grievance over whether or not they were entitled to vacation pay while they were on layoff. They filed a grievance with the union. The union processed the grievance. The firefighters ended up unhappy with the result. And then the firefighters sued the union and their employer claiming that the union had not represented them fairly. And the firefighters individually moved to compel arbitration. And what the court held in that case is individual employees don't have standing to enforce the collective bargaining agreement to compel arbitration. That's the proposition that that case stands for. And in this case, clearly, the party to the agreement is the union, not Ms. Whipple. The union has a legal obligation to represent Ms. Whipple and everybody in the bargaining. But the party is the union. And I realize we have an honest disagreement with the county about what this grievance procedure means. But just think for a minute, if you give effect to the county's argument, that allows somebody who's not a party to prohibit the union from meeting its duty to enforce the collective bargaining agreement. The union is the party. So if the only way the union can pursue an agreement is if somebody who is not a party initiates the grievance, that has the effect of barring the union as a party from proceeding to arbitration to enforce the collective bargaining agreement. That's an argument we would make to the arbitrator about what that language means. And I just would suggest we have, I mean, part of what an arbitrator would have to do is reconcile the language that the county relies on with the language that we rely on, which is the arbitration clause, which plainly says if a difference between the union and the employer involves an interpretation agreement which cannot be resolved by the parties under the grievance machinery. I mean, arguably, since an individual didn't file the grievance except in the county's argument, since Ms. Whipple didn't file the grievance, then the union can't resolve its dispute under the grievance machinery, so we go to arbitration. And that's another interpretation. But again, I think that's for the arbitration. Thank you, counsel. Thank you. Thank you all for your excellent briefs and argument today.